Good morning, your honors. May it please the court, my name is Ilana Cohn and I represent appellants City of Willits and City of Willits code enforcement officer Davy Bowles. I'd like to reserve two minutes for rebuttal. This is an appeal from the denial of qualified immunity as to City of Willits official Davy Bowles arising out of the city's termination of water service to a property inhabited by plaintiff appellee Mr. Gelber, who is a trespasser. Whether Mr. Bowles has qualified immunity is a two-prong analysis and the court has discretion as to which question to answer first. If I may, I'd like to start with the first question, which is whether a plaintiff has alleged a violation of his due process rights. Someone who occupies a vacant home without permission from the owner does not have the same rights as a lawful occupant. The central issue in this case is whether a trespasser who occupies a home without permission from the owner is entitled to the same protections regarding water service as a lawful occupant is. The city's entire argument is predicated on the fact that Mr. Gelber wasn't the title holder to the land. But can't you have exercise acts of ownership even without being the title owner? He was in possession of the land. He had taken steps to acquire ownership. He had paid the taxes. He had paid some $80,000 in improvements to the property. And your own ordinance in defining owner, I don't have it in front of me, includes acts of ownership. I can find the definition. I'm sure you're well aware of it. It doesn't require holding a title to the property. Yes, Your Honor. So a couple things. Do you agree with me? Okay. I found it. So ownership. City ordinance. Owner. Owner means the person's owning an interest in fee or the person in his name, the legal title to the property appears, dot, dot, dot, or exercising the person's in possession or exercising acts of ownership over the same for himself. So exercising acts of ownership is within the definition of owner in your own code. Your Honor, so first of all, our argument with regard to due process is that there was no property interest that was ever, he didn't have an entitlement. The statute that's referred to that has the definition of owner. But that's who you provide, that's who the City of Willets provides water to, is people that come within the definition of owner. Well, the definition of owner, first of all, it's vague and also it's not used anywhere in this code. Only later on where it talks about whether or not the city can go in, who has to maintain the... This is Title 14, Water Service, Chapter 1404, General Provisions. You're saying that doesn't govern this case? I'm saying that there's nothing in that definition, there's nothing in that section that you refer to that describes, it doesn't reference an owner at all. So it's this definition that's there, but it's not used later until a completely different section that has to do with access to the meter and interest on deposit. No interest shall be paid to... Well, but it is used on the application form in order to get water. Yes. So why is it used on the application form? Well, it's used on the application form to signify someone who has a legal title. And the definition... Oh, where does it say that? Anywhere in the ordinances or the regulations? Doesn't say that... That's my whole point. We're back to where I started, right? The city views this as if... Or Mr., at least Mr., who was the guy, the manager who turned off the water? Dave Eagles. False, false. Okay. He views this as you have to have a legal title to the house, but that's not what your law says. And nowhere else does it say that's what owner means. Well, acts of ownership? That's the law of adverse possession, which is well recognized in the state of California. Acts of ownership? Yes. Yes, but it's so vague in here. I don't think it can be said to suddenly convert him into somebody who has an entitlement. He was in the process, I mean, it's seven years of open and notorious, continuous possession of the property, and that's what he was doing. He was open and notorious, possessing the property, paying the taxes, making improvements. It was just a matter of time. Well actually, it's not before the court, but that never happened. The Deutsche Bank came in, so he never... That's not before the court. Right, I understand. And so we're talking about what was in front of, or what it should... I mean, you can't just go around not giving people notice you're going to turn off their water and turning it off. That's clear in light of Memphis Light, a Supreme Court decision. So, Your Honor, as to Memphis Light, that's very different. I would say that that's very different because the issue in Memphis Light is that it was a homeowner and there was a specific ordinance that set forth the procedures as to how, what the city could... There was a Texas law that said what could be done when you want to discontinue a water service or utilities for non-payment. It was completely spelled out. You couldn't do it for good cause. None of the cases ever, that none of the cases cited by Mr. Gelber or the court, none of the cases talk about somebody who has no right to begin with, who just comes in and trespasses and then somehow gets water turned on and then he has this entitlement. I would argue that Memphis Light doesn't apply here because Mr. Gelber never had the right to begin with. He wasn't the owner and in order to have an entitlement there has to be a statute or ordinance that restricts the agency's discretion or mandatory language. This is just a definition pulled out. It doesn't on its own... It's your ordinance governing water. It also has a section on discontinuance of service. And there's only, there's narrow circumstances in which the city's allowed to discontinue service without notice. Are you referring to... Section 14.32.130, health and safety discontinuance of service. I mean, I know you're not familiar with the ordinance, that's clear, but as a policy matter, isn't it in the city's interest to have people come in and improve properties and take something that's falling to pieces and occupy it and improve it? I mean, to me, I just don't even understand why this happened. Well, this is, first of all, this is a very expansive, in my opinion, this is a very expansive reading of the case law, Memphis Light, to suddenly apply it to someone who's trying to get a property. If you look at page 132 of the record, he has itemized all of his improvements. Over half were done after the water was shut off. Like, he's in there voluntarily. He wants to steal a property. He wants to get a property. He's not stealing a property. This is well, legally, it's a legal process well-recognized in the state of California and elsewhere. I understand, Your Honor, but I don't believe... You did take property law, right? I did take property law. Learned about adverse possession if you were in California. I did, I did. I thought it was five years, though, maybe. I don't know. I thought it was seven, but, you know. Okay, so, I don't see anywhere in any of the... Okay, I understand your argument. You're saying, you think that, I wouldn't, I think the right is clearly established, but... Okay, maybe Mr. Bowles didn't recognize it as applying to someone who lacked a title, which seems to be your argument today. But does that mean it's not clearly established? Yeah, so there's a couple things. In terms of whether he had a due process right to begin with, Apelli has cited a statute that doesn't even apply to him. He cited a state code. It has mandatory language. It limits discretion, but it has to do with non-payment. He paid all his bills, so that doesn't apply. He also cited a few, he didn't cite the owner. He in the argument regarding clearly established. So, if you have to, if you have a case that's Memphis Light that talks only about whether a municipality can turn off discontinued water service to homeowners for non-payment, and you have to try to find, I don't know, something in the code here, and a definition there, that shows you it's not clearly established to my mind. No, I mean, to someone who's managing this, it's clearly established in the city code, right? I mean, what do you look to? If you're, I mean, you'd think that you'd give it some thought. The guy's paying for the water, so you can't cut him off for that. Why wouldn't you give notice? Well, they gave notice in the form of the letter saying you have to provide, it's come to our attention that you don't, you're not the owner or the tenant, you have to provide it, and he didn't provide it. There was nothing that was going to be further developed in any hearing anyway. He's always stuck to his position that he was trying to get the property by adverse possession. But going back to, the ordinance only talks about disconnecting water when there's non-payment in certain limited circumstances. It doesn't say anything about what to do when you have a property and someone's moved in and it's owned by someone else. It doesn't say anything about how you disconnect that, and that's why the law's not clearly established. I would argue that there's nothing. Ms. Cohn, do you have any regulations in writing in the city of Willis that tell you that the Water Department can cut off water if they determine that the customer is a trespasser? There is nothing in the code, Your Honor. So where is the policy of the city of Willis that allows them to do this? Well, that's outside of the, you know, that's going to be, there is no policy, but that's not, assuming for the purposes of what he's alleged, that there is a policy that we did that. Wait, I think the question was, is there a policy, is there something in writing that entails you to do this? There's nothing in writing that says what to do in a situation where someone's moved into a property and they somehow got their water turned on. This is just a civil servant who decides that for the benefit of the community, this trespasser should not have water. Well, based on the code and what it says. What in the code? Well, the code section describes the limited, describes when you can, I mean, it's California law and it's in the code that you can't just shut off someone's water when they don't pay. The civil servant wouldn't think that would apply to him because he's somehow starting to pay. So that wouldn't be the procedure that he would think would be followed. He didn't believe that Mr. Gelber had right to the service to begin with. Did you say that it's your belief there's no policy of not providing water to trespassers? There's no policy of shutting off water to people. There's no policy to shut, there's no policy of shutting off water when you have someone who is a trespasser who got the water because it doesn't happen. But they're paying for the water. When they're paying for the water. But there is a policy of not providing water to trespassers. There's no written policy about, there's no written policy of not providing water to trespassers. Is there an unwritten policy that everybody knows about? That I'm not sure. It's not alleged in the. The city's application for water service asked three questions. One says, are you an owner, renter, or an agent? Isn't that a policy? There is a policy of requesting at the outset. There is an unwritten, but it is a practice that when someone comes in to get their water turned on, they must show proof of ownership or tenancy. We don't know why it didn't happen in Mr. Gelber's case. Did they have to show proof? It just seems like they just check a box. Well, on the application, it may just say check a box. But I believe he's cited, he's alleged what the city told him, which is there is a policy of requesting it. Right, and he fits within the definition of owner in the code. I don't think that this, I mean, I don't believe that he does. I don't. Acts of ownership. I mean, under adverse possession, these are the acts of ownership toward getting a possessory interest. Well, the acts of ownership, it's just not clear that that's what it means. It's not clear to the civil servant. Is going out and getting a mortgage or applying for, that could be an act of ownership. I'm trying to get a loan for my property. It's very vague. Paying taxes, paying for your water, paying taxes, improving the property, are not acts of ownership in your mind? I think based on the statute and the fact that, based on the ordinance and how it falls in and how owner doesn't come up anywhere else, I don't think that acts of ownership includes what he includes. It was intended to include somebody who moves into a property and starts deciding to claim it's theirs. Okay, you're over your time, counsel.  Good morning. Olani Slabo of Brian Cave Layton Paisner on behalf of Plaintiff Appellee Craig Gilbert. This court should affirm the district court. In California, a water service customer has a legitimate claim of entitlement to that service such that due process guarantees must apply before water service is terminated. What case says that? In California, Perez says that. Perez says that because California law requires good cause, Memphis Light applies in California to water service termination circumstances. Say that again, Perez says? Perez says that because California law requires good cause before termination of water service in California, Memphis Light applies before termination in this state. And why isn't cutting off the water to a trespasser good cause? It might be, Judge Baird, but the point is that if it is good cause, the conversation needs to happen at the hearing, the one that Mr. Galbraith didn't receive. So due process is still violated, even if Ms. Cone comes up here and argues that they did have good cause. You mean the water department can't consider good cause by itself without noticing a hearing before court? That's exactly right, Your Honor. That's what Memphis Light says. That's what the due process case is supposed to be saying. Memphis Light was involved in a statute exactly opposite to the statute we have in California. In Memphis Light, they said that you can't turn off the water, or the utilities, unless it's for non-payment, right? My understanding, if I remember correctly, the Supreme Court in Memphis Light looked to case law, and the case law said for cause, and one of the situations is non-payment, yes. In California, the one thing that you can't use to turn off the water is non-payment unless you go through all the steps. But there's no limitation as to why you can't turn off the water for other reasons, other than what you say Paris says in good cause. And the question is, isn't prohibition of water to a trespasser in the mind of the civil servant good cause? So two points, I think, Judge Brey. One, whether it was good cause in the mind of Bowles is irrelevant, given that we're looking at an objective standard here. But two, again, even if it's true that it was good cause, that doesn't obviate the need for hearing. Matthews versus Eldridge, Fuentes, they all say that undisputed property ownership is not necessary. So wouldn't there have first been some kind of hearing before the Water Board? I mean, I don't know how Willits is organized, but I don't even know where Willits is. Mendocino. Mendocino, okay. Wouldn't there be some kind of hearing or administrative process in which good cause would be determined? Exactly. It would be later contested in the courts if it had to. But there wasn't a determination. There doesn't seem to have been a determination by the city, separate from Mr. Bowles, that good cause includes that you're a trespasser or that you don't have legal title. Like, that's basically what you're asking for here. Exactly. And one other thing, we're at the 12B6 stage, right? Yes, we are, Your Honor. Does the plaintiff, in trying to state their claim, have to refute the existence of qualified immunity or not? No, they do not, Your Honor. We cited cases to that point in our brief. Right, because counsel for the others for Willits got up and started talking about qualified immunity and the prongs and all of that. But that's not even an issue at this stage of the proceeding, right? Correct. They might put that as an affirmative defense in their answer when they answer the complaint. But they haven't had the opportunity to do so yet. Well, actually, they have, and it's in there. But I think I take your point still the same, that Mr. Galbraith didn't need to anticipate in his complaint that they were going to assert qualified immunity. But I want to go back to the customer point again. My friend, Ms. Cohn, said that Memphis Light and Perez in the cases required Mr. Galbraith to be a title holder or renter. That's not true. You can read Memphis Light. Memphis Light is focused solely on the status of utility customers. I read Memphis Light yesterday, counted myself. The majority opinion mentions utility customers about 50 times. Owner and homeowner show up four. They don't show up at all in Perez. So I think that distinction is meaningless. And we can go even further, as the presiding judge noted. Even if ownership was required, Mr. Galbraith met the definition of owner under the city's own code. He exercised acts of ownership, paid 70-something thousand dollars to improve this home, paid the property taxes, paid, applied for and received water service. So I think he exercised acts of ownership enough to meet that definition, even if ownership was required, which again, we don't think it was. Turning to clearly established law, actually, sorry, one more point on constitutional violation. I want to point out again that Fuentes and Memphis Light cites Fuentes, says that undisputed property ownership is not necessary for due process to kick in. So the argument the city is making that Mr. Galbraith needed title to the property, not only wrong, but again, even if it was right, it did not need to be undisputed. Just a legitimate claim of entitlement to the water service was enough for due process to kick in and for him to have adequate notice and an opportunity to be heard. Turning to constitutional violation, I'm sorry, clearly established law, Memphis Light clearly established that where state law restricts the government's right to terminate utility services at will, due process guarantees, the right, adequate notice and the right to be heard must be satisfied. That wasn't exactly the holding. It said where the termination can only be done for nonpayment, right? Then you have a right if you paid. But that's exactly contrary to California law. California law does not restrict the discretion of the municipal utility to terminate water except when for nonpayment. That's the only restriction that I can see on the termination right of a utility in California. So I guess it depends on which source of entitlement you're pointing to. If you're looking to Paris, that's not how we read Paris, right? Paris says good cause means not at will. And so because it's not at will, Memphis Light applies. If you're looking at the California statutes we cited, those are sort of secondary sources of entitlement. We think Paris answers the question, but the California statutes, the Willis statutes that he says are the source of entitlements are sort of secondary to the Paris case itself. So back to clearly established law, since Memphis Light, other courts have recognized using Memphis Light that a legitimate claim of entitlement to continued utility services is protected by due process. We cited three in our brief, one from the Sixth Circuit, one from the Second, and one from the Third. Bowles claims that Memphis Light cannot be clearly established law because Galbraith hasn't identified a case that's on all four of them. Galbraith has identified a case on all fours with his, but he didn't need to. The Supreme Court has rejected the notion that qualified immunity applies. But why are we talking about qualified immunity? That comes up at the summary judgment stage. Well, I — sorry, Your Honor. Because qualified immunity was considered in the motion to dismiss, was a basis that Bowles alleged — that Bowles argued was a reason to dismiss the case altogether, or at least the 1983 claim against him. Okay. That you don't need a case on all fours makes sense. Some distinctions can always be drawn between precedent and the current case. The issue is whether the distinctions are sufficiently material such that the precedent does not clearly establish the unlawfulness of the conduct. That Mr. Galbraith was attempting adverse possession is not material. None of the sources that we cite in our brief, none of the sources that are in his complaint required him to own or to rent the property. And the fact that he was an adverse possessor did not prevent him and did not prevent the city from voluntarily giving him water service in the first place. But our — if I may interrupt. You know, our qualified immunity cases say it protects all but the plainly incompetent. And you could see a city official thinking, okay, this person's not an owner, not a renter, a trespasser, adverse possessor, I can cut off water service. I mean, it seems reasonable for a city official to assume that, that it's not a violation of the law. I don't think so. Because, again, if you read Memphis Light, it's obvious the focus is on utility customers. If the Supreme Court meant only to protect title holders, it would have said title holders. But it repeated repeatedly that the status of the crafts as utility customers gave them due process. I also think if you read Memphis Light and you read the section that brings up Fuentes that mentions that undisputed property ownership is not necessary, that also gives you the sense that what Memphis Light is protecting is the erroneous deprivation of water service despite the city's cause and that notice and opportunity to be heard must come first. Does your argument depend on the fact that Mr. Gilbert paid property taxes and improved the property? Suppose it was just someone who came in and claimed, this is my property, and I want water service. He's not improving the property, not paying property. They assume paying property tax is minimal, not improving it, but just you're a more classic trespasser. I think, excuse me, I think our case, yes, I think our case makes the question a lot easier to answer. To distinguish the analogy you just gave or the hypothetical you just gave of the individual walking onto property, yes, that individual would not have the acts of ownership that Mr. Gilbert has. But more importantly, that individual would not have the voluntary conferral of the legitimate claim of entitlement by the city. The city, of course, decides who to give this benefit to. Here the city gave it to Mr. Gilbert despite no constitutional obligation to give him water service. They gave it to him. And once they did, due process kicked in. So that situation of a – Well, pardon me, counsel. I'm having difficulty understanding what facts have to be shown at a hearing to show an objective basis for denying the water, where it's stipulated here, it's undisputed in this case, that he was a trespasser. So let me restate the question. Hopefully I've got it right. You're asking me what would need to be shown at a hearing to prove good cause? Good cause. I think it could be little more than Mr. Gilbert, the city of Willits, requires only title holders or renters. No, that's a legal argument. Oh. This man is a trespasser. Once he's – he's an admitted trespasser at this point because he doesn't have adverse possession title. And why can't the city of Willits, without a hearing, without anything else, say we don't like – we don't want to provide water to trespassers? That's within our discretion. We can't cut it off for nonpayment, but we can cut it off for trespassers. What's wrong with that? Our reading of the case law and the reading of Memphis Light precludes exactly that. I think if we're looking at Matthews v. Eldridge, the line of cases post-1970s from the Supreme Court, due process protects individuals who have an entitlement even if an official believes that entitlement is based in fraud or misrepresentation. But it's not only the official that believes it. It's Mr. Gilbert who believes it. He's the trespasser. He admits that, doesn't he? He admits that he was adversely possessing the property, but he says in his complaint that he did not misrepresent himself and cites the Willits definition of owner to prove that. He fits the Willits definition of owner because he exercised acts of ownership over the property for himself, which conforms with California State courts, the California Supreme Court's explanation and definition of what adverse possession is. Turning back to Memphis Light and clearly established law, as far as we're aware, there's no court that's limited Memphis Light to just nonpayment. In fact, we cited a case in our brief, Johnson, the case out of the Sixth Circuit, that applied Memphis Light to a situation in which officials in the city of Saginaw terminated water service after a gang-related shooting, so having nothing to do with payment or trespass or any of the facts in Memphis Light. So when considering the material facts, the cases we cite are not meaningfully distinguishable. Each involved a customer that had a legitimate claim of entitlement to service, and that service was terminated without due process. If I can ask you one question. Just assume for purposes of this question that Mr. Gilbert gets qualified immunity based on the second prong. What happens with the Monell claims and the State claims against the city? If he gets – so you said if he gets – if Bowles is entitled to qualified immunity because there's no clearly established law, nothing happens to the Monell claim because his court wouldn't have jurisdiction because that decision would not necessarily resolve the Monell claim. Only if you find that there's no constitutional violation would the Monell claim go away. But either – no decision from this Court should affect the State contract law claims. With the 40 seconds I have left, I could just touch on the sufficiency of the complaint, which I don't think my friend Ms. Cohn mentioned. We believe Bowles abandoned that argument. It's all foam, no beer. In the brief, he doesn't specify the grounds for the result he wants. It's not clear why he believes Gilbert's complaint is insufficient. But in the event – if you look at the three requirements in his complaint, he states that he had a protective property interest in water service. He states that Bowles is the one who deprived him of that interest. And he alleges that there was a lack of process, that he had inadequate notice, and he didn't get the opportunity to be heard. In conclusion, the city of Willits did not have a constitutional obligation to give Mr. Gilbert water service. But once they voluntarily chose to do so, they could not terminate that service without due process. This Court should affirm the district court. Thank you very much. Thank you very much, counsel. Gilbert v. City of Willits is submitted. Oh, did you – oh, you did. Okay. I'm sorry. I didn't mean to cut you off at all. Half left, but – No, I'm sorry. I didn't realize you had time left. Okay. Just to address – Okay. It's okay. I didn't realize you didn't have time left because you didn't have time left. But I will give you two minutes anyway. Oh, okay. I apologize for the – No, no. It's okay. So just as an initial matter, qualified immunity can be decided at the motion to dismiss stage where it appears on the face of the complaint. And it does. It's a really simple issue. Did someone in Mr. Gilbert's shoes have – was the law clearly established such that a reasonable official would understand that what they're doing violates the law? And there's no other facts, really, that aren't stated. I mean, the facts are stated in the complaint. And the purpose of qualified immunity is to – you lose the immunity if it's not decided at the earliest possible stage, which I believe we could do here based on what's alleged in the complaint. With respect to my counsel's argument regarding Fuentes, first of all, I would just say Fuentes is completely different in our opinion. Fuentes was a – people who were purchasing goods in a financing agreement. And while they didn't have legal title yet, they did have the right to possession. They had the right to possession under the sales contracts. So the fact that the court said you don't need legal title to be afforded due process, it's not relevant. It's not applicable to our case because it's a very different situation. The court also said they entered into this financing agreement, they paid a higher price, they had a right to possession. Mr. Gelber didn't have a right to possession. And with respect to qualified immunity, it doesn't need to be an identical case. That's right. It doesn't need – but it has to be sufficiently clear that somebody knows, that an official knows that they are violating a clear command of the law. There's none of the cases, whether they use the word customer but don't define it, every single – It's a reasonable – it's an objective standard. Correct. It's an objective standard, but there has to be some – there has to be controlling authority that lets the reasonable official know that what they're doing is wrong and is a violation of someone's constitutional rights. And in this case, Perez also was a homeowner, which you can tell in Mosk's dissent at page 897. Perez is about remedies that the city has against when someone hasn't paid their utility bill. And Justice Mosk said in the dissent the city has remedies to employ against a recalcitrant homeowner. None of the cases that Plaintiff has cited, even the one that he cited, the Saginaw case, she was a property owner and a business owner. So I don't believe that this meets the specificity test to say a customer has a right to continued water service, is entitled to due process before water service is shut off. That's the high level of generality that this court and also the Supreme Court has said is not proper when you're determining qualified immunity. Okay, so now you're over your total time. Okay, thank you. Okay, thank you very much. Gelber v. Willits will be submitted.
judges: WARDLAW, BEA, LEE